IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HASSAN ALI, | ) | |
|     Petitioner, | ) | Civil Action No. 7:22cv00404 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| J. C. STREEVAL, | ) |     United States District Judge |
|     Respondent. | ) | |

**MEMORANDUM OPINION**

Hassan Ali, a federal prisoner proceeding *pro se*, has filed this petition for a writ of habeas corpus, pursuant to 28 U. S. C. § 2241. In it, he alleges that he was denied due process during prison disciplinary proceedings, which resulted in a conviction and the loss of earned good-time credits, among other penalties. Ali originally filed his claim as a civil rights complaint in the United States District Court for the Eastern District of California. After that court construed it as a § 2241 petition and transferred it here, this court severed his original petition into two cases. (*See* Dkt. No. 2.) This case involves Ali's challenge to Incident Report (IR) No. 3323453, which charged him with interfering with a security device and refusing to obey an order of staff on November 2, 2019, in violation of Bureau of Prisons (BOP) discipline codes 208 and 307.

In his § 2241 petition, Ali alleges that he was "deceived" into waiving various rights at his disciplinary hearing and was not able to present exculpatory witnesses and video evidence to prove the IR "false." (Dkt. No. 1, at 3.) Respondent has filed a motion to dismiss the petition, or, in the alternative, for summary judgment, to which Ali has responded. (Dkt. Nos. 7, 10.)

As discussed below, the court concludes that there are disputes of fact that preclude the grant of summary judgment in respondent's favor. It will therefore deny the motion for

summary judgment.

In light of the court's ruling, the court will allow the parties thirty days to discuss the possibility of a mutually acceptable resolution of Ali's claims. Also, if the parties would like to request a referral to a settlement conference/mediation with a magistrate judge of this court, they may do so. If the court has not received either a notice of settlement or a request for a referral to a settlement conference at the conclusion of thirty days, then the court will refer the matter for an evidentiary hearing before the assigned United States Magistrate Judge to resolve the disputed facts.

## I. BACKGROUND

### A. BOP's Inmate Discipline Process

When BOP staff have a reasonable belief that an inmate has violated a BOP regulation, staff prepare an incident report and provide the inmate with a written copy of the charges against him, ordinarily within twenty-four hours of staff becoming aware of the inmate's involvement. 28 C.F.R. § 541.5(a). An investigating officer informs the inmate of the charges and asks for a statement from the inmate, but the officer also advises him of his right to remain silent. *Id.* § 541.5(b).

At that time, an inmate may give an explanation of the incident, request that witnesses be interviewed, or request that certain evidence be obtained and reviewed. *Id.* If an inmate requests potentially exculpatory evidence, such as video surveillance, the investigating employee must make every effort to review and preserve that evidence. Any comments are recorded on the IR under the "Investigation" section. (Carrie Cervantes Decl. ¶ 8, Ex. 1 to Resp.'s Mem. Supp. Mot. Summ. J., Dkt. No. 8-1.)

Once the investigation is complete, a Unit Discipline Committee (UDC) reviews the

incident report, usually within five days of its issuance. 28 C.F.R. § 541.7. The inmate is permitted to appear in person or electronically at the UDC review (except in limited circumstances), and he is allowed to make a statement or present documentary evidence on his own behalf. *Id.* (*See also* Cervantes Decl. ¶ 9.) Any such statement or evidence is noted in the UDC portion of the IR. (Cervantes Decl. ¶ 9.) The UDC makes a decision based on at least some facts, or, in the case of conflicting evidence, based on the greater weight of the evidence. 28 C.F.R. § 541.7(e). The UDC can find the inmate committed the prohibited act (or a similar prohibited act), find he did not commit it, or refer the case to the Disciplinary Hearing Officer (DHO) for further proceedings. *Id.* § 541.7(a). When the violation is serious or warrants consideration of non-minor sanctions, the UDC generally refers the charges to the DHO. *Id.*

If a UDC refers for a DHO a hearing, it advises the inmate of his rights and gives written notice of them, which is then signed by the inmate. When a hearing is held before a DHO, the inmate has the right to call witnesses and to present documentary evidence. (Cervantes Decl. ¶ 10.) An inmate may request a staff representative at the hearing, who can assist the inmate in understanding the charges, speaking with and scheduling witnesses, obtaining written statements, and otherwise preparing evidence to present. 28 C.F.R. § 541.8.

At the hearing itself, the inmate may present his own statement and documentary evidence, and he can present witnesses as long as the presence of such witnesses would not jeopardize institutional security or result only in the introduction of repetitive evidence. *Id.* A DHO does not conduct his or her own investigation, however, and so only considers evidence gathered by the investigating staff member or presented by the inmate. (*See* Cervantes Decl. ¶ 11.) As with the UDC, the DHO makes a decision based on at least some facts, or, in the case of conflicting evidence, based on the greater weight of the evidence. (*Id.* ¶ 12.) The DHO can

3

determine the inmate committed the act as charged or a similar prohibited act, find the inmate did not, or refer the IR back for further investigation and review. 28 C.F.R. § 541.8(a).

The DHO prepares a record of the proceedings, although it need not be verbatim. The record also includes the DHO's decisions and the reasons for the decision. *Id.* The DHO then gives the inmate a written copy of the decisions and disposition, ordinarily within 15 days of the DHO's decision. *Id.* (*See also* Cervantes Decl. ¶ 14.)

**B. The Offense and Investigation**

Ali is currently incarcerated at the United States Penitentiary (USP) in Lee County, Virginia. The incidents giving rise to the petition occurred when he was incarcerated at USP Atwater, in California.

IR 3323453 alleged that on November 2, 2019, Ali committed the prohibited acts of interfering with a security device and refusing to obey an order of staff, in violation of BOP discipline codes 208 and 307. Ultimately, he was only found guilty of the security device charge, after the DHO concluded that the two charges were largely duplicative.

The IR, completed by Officer J. Amador, states as follows:

> On November 2, 2019 at approximately 11:35 a.m. while picking up meal tray [sic] in Special Housing Unit Range D cell 235 Ali, Hassan Sharif Registration No. 30380-057 stuck his right arm out of the trap demanding to be moved from his cell. I then gave inmate Ali a direct order to put his arm back inside his cell, but [he] did not cooperate to put his arm back inside the cell and refused my orders. At this time staff then advised Operations Lieutenant over current situation.
>
> I identified inmate Ali, Hassan Sharif Registration number 30380-057 through TRUSCOPE and unit bed book cards.
>
> This incident report is a re-write, completed on 11/3/19 at 10:50 a.m.

(IR, § 11, Cervantes Decl., Attach. F, Dkt. No. 8-1, at 24–25.)

A copy of the IR was provided to Ali on November 3, 2019. He declined an opportunity to make any statement, and he did not provide any mitigating or extenuating evidence or circumstances during the investigation of the IR.

## C. The Disciplinary Proceedings Related to IR 3323453

After the IR was issued and provided to Ali, the UDC held its hearing on November 4, 2019. (IR § 21.) At the hearing, Ali was present and provided a written statement. (*Id.* § 17.) In his statement, he asserted that he did not refuse to obey an order from Amador. He acknowledged that another officer (Officer Simpson) had asked him to let his hand off of the trap. In response, he informed both Simpson and Amador that he "was in fear of threat on [his] life" from his cellmate. (Compl., Attach. A2, Dkt. No. 1, at 9.) He claims that the officers returned with Lt. Kaleta, and he told Kaleta of his fears, at which point Simpson was able to close the trap. But instead of addressing the situation, Lt. Kaleta told Ali he would not be moved until an incident actually occurred between him and his cellmate. (*Id.*) Thereafter, Ali says he had a "psychological breakdown" and eventually Case Manager Padgett came and spoke with him and said he would try to help get Ali moved. Later, Lt. Davis ordered officers to remove Ali and place him in another cell. Ali's statement also said that "video surveillance and [his] witnesses will confirm [his] account of this incident." (*Id.*) On the second page of his statement, he asked that Case Manager M. Padgett be assigned as his staff representative and requested two staff witnesses—Lt. C. Davis and Case Manager M. Padgett—and an inmate witness, as well. (Compl., Attach. A3, Dkt. No. 1, at 10.)

Ali's written statement also complained that the initial incident report was *never* delivered to him and the rewritten IR "was delivered to [him] passed 24 [hrs.] after the alleged incident occurred," which he alleges violated BOP regulations. (Compl., Attach. A2, Dkt. No. 1,

5

at 9.) The documents reflect that the incident occurred on November 2, 2019, at 11:35 a.m., the incident report was delivered to Ali on November 3, 2019, at 5:09 p.m., and the disciplinary hearing began the following morning, on November 4, 2019, at 11:20.

The UDC referred the IR to the DHO for further hearing. (*Id.* § 20.) Following the UDC hearing, Ali was given a form advising him of his rights with regard to the disciplinary hearing, which he signed. (Inmate Rights at Discipline Hearing, Cervantes Decl., Attach. G, Dkt. No. 8-1, at 13.) He also signed a form waiving his right to have a written copy of the charge at least 24 hours before appearing before the DHO.[1] On the form advising him of the hearing, he did not request a staff representative. (Notice of Discipline Hearing Before the DHO, Cervantes Decl., Attach. H., Dkt. No. 8-1, at 29.)[2] He did, however, request a witness on that form, but the DHO Report indicates that, at the hearing itself, he opted to waive his right to call any witnesses. (DHO Report §§ III, V.)

The hearing officer, Carrie Cervantes, has submitted an affidavit in this case that provides general background information about the BOP disciplinary process and largely echoes what is in the DHO report. As noted, the DHO Report states that Ali waived his right to witnesses and to a staff representative at the hearing. (DHO Rep. §§ II, III, Cervantes Decl., Attach. I, Dkt. No. 8-1, at 31–33.) Specifically, it says the "DHO confirmed the inmate received a copy of his Incident Report, did NOT want to call any witnesses [and] did NOT want a staff representative. (*Id.* § V, Dkt. No. 8-1, at 32.)

In addition to Ali's written statement discussed above, which the DHO considered, Ali

---

[1] The DHO acknowledged that there was a delay in providing a copy of the IR to Petitioner due to the IR needing to be rewritten for corrections. But the DHO pointed out that Ali voluntarily waived his right to receive the IR 24 hours in advance of the hearing, and he did not voice any procedural complaints during the hearing. (DHO Rep. § V.)

[2] As noted above, though, the second page of Ali's written statement requested both witnesses and a staff representative. (Compl. Attach. A3, Dkt. No. 1, at 10.)

also made an oral statement denying the charge and stating instead, "I put my arm out to get staff's attention. My cellie and I was not getting along. I needed to be moved." (*Id.* §§ III, IV.) With regard to the verbal statement, the DHO stated that wanting to get the staff's attention "is not a valid reason to block staff from securing the food trap. Further, the incident report does note that Ali requested to be moved from the cell while he stuck his right arm out through the food trap. However, there is no evidence that Ali indicated to staff that he and his cell mate were not getting along, or that his safety was in jeopardy." (DHO Report § V.)

The DHO stated that she also considered Ali's written statement in which he explained that he was simply trying to ensure that he was moved and that he was in fear for his life, but she was not persuaded that any of this information was an adequate excuse for Ali's behavior. In particular, the DHO noted that there was no evidence that Ali actually spoke with Lt. Kaleta or Lt. Davis. Moreover, the DHO noted that, if Ali truly felt his life was in danger, there were other courses of action Ali he could have pursued, including pushing the cell duress button, as opposed to interfering with the security of the food trap by refusing to remove his arm. (*Id.*)

The DHO further noted that Ali's written statement complained about the fact that he was not given the IR within 24 hours of the incident, but the DHO noted that this was due to the IR being rewritten. Moreover, the DHO noted that Ali "VOLUNTARILY signed a waiver of 24-hour notice before the hearing. (*Id.*)

After consideration of Ali's statements, the IR, and Ali's quarters assignment history, the DHO concluded that Ali committed the prohibited act of Interfering With/Blocking a Locking/Security Device (Code 208) but that he did not commit the prohibited act of Refusing to Obey an Order, which the DHO believed, "[b]ased on the circumstances of the incident," was "largely duplicative to Code 208." (*Id.* § V.) The DHO imposed various sanctions—the loss of

7

27 days of earned good conduct time, 15 days of disciplinary segregation, a loss of commissary and visiting privileges for 90 days, and an impound of personal property for 30 days. (*Id.* § VI.)

On appeal from the DHO decision, Ali raised a number of issues. First, he argued—as he does in this petition—that he was "deceived" into waiving his rights. Specifically, he asserts that the DHO and her secretary informed Ali that he was scheduled to transfer on the next bus out. They told him that because his requested witnesses and staff representative were not available at the time, if he did not waive his 24-hour notice and have the hearing held then, or if he insisted on waiting for his witnesses and requested representative, he would not leave on the scheduled transfer. He asserts that the information about his pending transfer "was not true," because subsequent to his hearing—and despite his waiving all of those rights—two transfer buses left and Ali remained at Atwater. (Compl., Attachs. A7, A8, Dkt. No. 1, at 14, 16.)

On appeal, Ali also insisted—consistent with his earlier statement—that surveillance video would show the numerous times staff kept returning to his cell until he was moved, as well as that he did speak with Lt. Davis and Lt. Kaleta. (*Id.* at 16.) His appeal document also stated, although this was not in his original statement, that he did use the cell's duress button and the video would reflect that. Thus, according to Ali, the video evidence would undermine the DHO's reasons for her decision. Ali also argued that the sanction was inappropriate. (*Id.*) His convictions and the sanctions were affirmed on appeal. He appealed to the next level, raising some of the same arguments and also challenging incorrect statements made in the regional appeal decision, but his conviction was again affirmed.

## II. DISCUSSION

**A. Summary Judgment Standard**

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any

8

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[3] In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

**B. Due Process Claims**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amendment XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). It is well established that the loss of earned good-time credits, which was part of Ali's penalty for IR 3323453, is an interest sufficient to invoke the protections of due process. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

---

[3] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Instead, the inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67)). Although *Hill* simply referenced "advance written notice," *Wolff* actually required that notice had to be given "no less than 24 hours" before the hearing, in order to allow the inmate "to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564.

It is unclear to the court whether Ali is challenging the sufficiency of the evidence against him, but the court concludes that there was—at a minimum—"some evidence" that he had placed his hand in the food trap and disobeyed a request from staff to remove it. Indeed, he admitted as much, although he provided an explanation as to why. Thus, there was no violation in terms of substantive due process. *Hill*, 472 U.S. at 454, 456 (holding that due process was satisfied if "the findings of the prison disciplinary board are supported by some evidence in the record" and explaining that "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in fact").

Ali's claims of procedural due process errors, however, are stronger. For example, it is undisputed that Ali received notice of the hearing less than 24 hours before it began, which is a procedural error under *Wolff*. Respondent concedes that Ali received the IR and notice of DHO hearing less than 24 hours before the DHO hearing but argues that Ali voluntarily waived his

10

right to more notice when he signed the form indicating his intent to do so.  For his part, as noted, Ali claims that his waiver was not voluntary but was done in response to misrepresentations by the DHO and her secretary threatening a delay of his transfer.  Ali also insists that the same misrepresentations coerced him into waiving his right to call witnesses, request video review, and have a staff representative.

As to the voluntariness of his waivers, this case differs from many cases where a petitioner states in summary fashion that he was "tricked" or "deceived."  *See, e.g.*, *Scott v. Wilson*, No. 3:16CV804, 2018 WL 1144586, at *8 n.6 (E.D. Va. Mar. 2, 2018) (finding habeas petitioner was not entitled to an evidentiary hearing based on "airy generalization and conclusory allegation" that he signed a document "under duress and involuntarily"); *Crockett v. Stine*, Civil Action No. 6:07-396-DCR, 2008 WL 2098085, at *2, *6 (E.D. Ky. May 19, 2008) (denying habeas relief despite claim that he was "tricked" into dropping his requests for a staff representative and witnesses where he presented no evidence in support of his bald assertion).

Here, Ali has noted the specific alleged misrepresentations that were made to him in an effort to get him to waive his rights, when they were made, and by whom they were made.  For purposes of summary judgment, the court must credit Ali's sworn assertion that the DHO and her secretary lied to him and told him that if he proceeded immediately to the hearing, he would be transferred on the next bus, but if he did not waive the right to 24-hours of notice and his right to present witnesses and have the assistance of a staff representative, his transfer would be postponed.  Notably, moreover, Cervantes's declaration does not directly address these allegations—except to point out that the DHO Report states Ali voluntarily waived his rights— nor has respondent filed a reply addressing them.

Further, the fact that Ali initially—and in writing—requested both a representative and

11

witnesses, but then supposedly changed his mind during the hearing, supports his assertion that he was told something before the hearing or at the beginning of the hearing that made him change his mind on those issues. And he has maintained the same argument about his involuntary waiver throughout his disciplinary appeals. Thus, the court concludes that there are disputes of fact concerning the voluntariness of his waivers.

Taken individually, some of the waivers of rights—even if coerced—might not constitute a due process error. For example, there is no constitutional right to a staff representative, at least in cases where the inmate is not illiterate and the issues are not complex. *See Wolff*, 418 U.S. at 570; *Macia v. Williamson*, 219 F. App'x 229, 233 (3d Cir. 2007); *Holt v. Entzel*, No. 3:18-CV-46, 2019 WL 2946072, at *4 (N.D.W. Va. May 15, 2019) (noting that a prisoner is entitled to aid from a fellow prisoner or staff "if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case"). Thus, even if his waivers were coerced, his loss of a staff representative alone would not entitle Ali to habeas relief.

Nonetheless, taken in total—and construing facts in the light most favorable to Ali, as the court must—there are genuine issues of material fact regarding the alleged due process violations because Ali was deprived of 24-hours' notice of the hearing, one of the cornerstones of process due under *Wolff*, and the ability to present witnesses and have video evidence considered in his defense. The court must determine, then, whether those violations were harmless, as respondent argues.

In considering harmlessness concerning the 24-hour notice, it is true that Ali was able to complete his written statement, which included a request for a staff representative, witnesses, and

a review of video surveillance.[4] But when pressed to waive all of those rights—allegedly through the use of false promises—he was deprived of the full amount of time for preparation, was deprived of the ability to consult with anyone or even to review other evidence, such as the video he requested, and was deprived of all evidence other than his own statement. To determine whether those deprivations were harmless, the court must determine whether the evidence he initially sought to introduce—before his allegedly invalid waiver—could have "aided [his] defense." *See Lennear v. Wilson.* 937 F.3d 257, 277 (4th Cir. 2019) (explaining that in order to show a procedural due process violation based on evidence not being permitted or considered, a petitioner must show that the evidence could have "aided the [inmate's] defense").

At this juncture and based on the current record, the court finds that there are also disputes of fact as to harmlessness. The DHO seemed to disbelieve that Ali feared for his safety or life, that he conveyed his fears for his safety to anyone, or that he attempted anything other than putting his hand in the trap (such as using the duress button) in order to convey his fears for his safety to anyone. Indeed, the DHO's decision appears to leave open the possibility that if, in fact, Ali only refused to remove his hand from the trap in order to ensure he had an opportunity to convey his fears for his own safety, the result of the hearing might have been different. Given that possibility, it may be that the witnesses or video could have aided his defense, particularly if they provided evidence that he was pressing the duress button, that he repeatedly told the reporting officer and Simpson that he feared for his life, or that he spoke with numerous officials about feeling threatened, including Lieutenants Kaleta and Davis. Such testimony would significantly undermine the basis for the DHO's decision.

---

[4] Respondent insists that Ali did not request video review prior to or during the hearing. But Ali's statement submitted to the DHO requested review of video surveillance. True, he later "waived" his right to present such evidence, but—as noted in the text—the validity of that waiver is in question.

In light of these disputed facts, the court will deny the motion for summary judgment. The court will give the parties thirty days to discuss a mutually acceptable resolution of this case. Within that thirty-day window, the parties also may request a referral to a settlement conference before a magistrate judge of this court. If no notice of settlement and no request for referral is filed within thirty days, then the court will refer the case to the assigned magistrate judge for an evidentiary hearing. *Cf. Goyer v. Adams*, No. 21-7294, 2022 WL 17848959, at *2 (4th Cir. Dec. 22, 2022) (remanding to the district court where the petitioner denied that he signed forms confirming that he was notified of his rights and denied declining the opportunity to present evidence or witnesses and explaining circumstances where an evidentiary hearing was required to resolve factual disputes).

### III.  CONCLUSION

For the reasons stated, the court will deny the motion for summary judgment. An appropriate order will issue this day.

Entered: February 7, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge